UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LASHAUNDA M. MCDANIEL,<br><br>        Plaintiff,<br><br>    v.<br><br>PATRICK R. DONAHOE, Postmaster General,<br><br>        Defendant. | Case No.  12-cv-05944-JSC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 55 |

      In this postal-worker employment suit, Defendant Patrick R. Donahue, Postmaster General of the United States Postal Service ("USPS"), moves for summary judgment on pro se Plaintiff LaShaunda McDaniel's claims of sex discrimination, retaliation, and harassment.  After carefully considering the parties' submissions, and having had the benefit of oral argument on September 15, 2014, the Court concludes that no reasonable trier of fact could find in Plaintiff's favor on any of her claims and GRANTS Defendant's motion for summary judgment.

**BACKGROUND**

      Plaintiff LaShaunda McDaniel worked for USPS as a custodian from June 24, 2006 to March 6, 2009.  Plaintiff worked at the San Francisco Processing and Distribution Center (P&DC), and was given assignments to work in a particular area of the facility.  Plaintiff worked on "Tour 2," which was a group of about 10 or so custodians; the number of women in the group, not including Plaintiff, ranged from two to four.

      Bonnie Noble became her supervisor in 2007 and was her supervisor until she was removed from her position in 2009.  Noble has been a supervisor with USPS since 2001.  At all times while Ms. Noble was a supervisor at the P&DC, custodians were required to, among other

things, be regular in their attendance at work, work in their assigned locations, follow the instructions of supervisors, and refrain from any acts of violence or threats of violence.

Noble issued Plaintiff several discipline warnings starting in late 2007.  On August 5, 2007, Noble initially issued a "Letter of Warning" to Plaintiff regarding a charge of unsatisfactory attendance.  (Dkt. No. 57 ¶ 4 & Exh. 1.)  The letter explains that Ms. McDaniel had unscheduled leave without pay, unscheduled sick leave, and unscheduled leave during a number of days between April 16, 2007 and July 15, 2007.  Noble reduced the Letter of Warning to an "official discussion," which meant the letter was no longer considered discipline.   (Dkt. No. 57 ¶ 4.)

Noble issued another Letter of Warning to Plaintiff on July 3, 2008 "following a 'day in court'[1] on June 2, 2008 regarding failure to be in regular attendance and another 'day in court' on June 26, 2008 regarding leaving the work area/assignment."  (Dkt. No. 57 ¶ 5.)  The July 2008 letter states that despite being given 30 days to improve her attendance at her "day in court," Plaintiff had two unscheduled absences in that 30-day period.  The letter states further that "I must warn you that any future deficiency (or misconduct, or offense) will result in more severe disciplinary action being taken against you.  Such action may include suspensions, reduction in grade and/or pay, or removal from the Postal Service."  (Dkt. No. 57, Ex. 4.)

An incident with a co-worker and a subsequent arrest of Plaintiff led to further discipline by USPS.  Plaintiff and her co-worker Norman Hollis had an affair that dissolved when Plaintiff discovered Hollis' plan to include his girlfriend, rather than Plaintiff, in his new business venture.  On June 15, 2008, as Plaintiff and Hollis were clocking out of work, Plaintiff informed Hollis that she was going to tell his girlfriend about their relationship, which made Hollis upset.  (Dkt. No. 72 (Plaintiff's Opposition) at 14.)[2]  Plaintiff and Hollis proceeded out to the parking lot and Plaintiff spit on the window Hollis' truck while he was walking behind her in the parking lot of the P&DC.  (Dkt. No. 56 at 162.)  Plaintiff and Hollis got into their respective cars and started driving away

---

[1] Per USPS rules, a "day in court" is something that a supervisor is required to give to an employee prior to issuing discipline.

[2] For the reasons discussed below, statements within Plaintiff's personal knowledge may be considered as evidence for purposes of summary judgment—even though they are unsworn—given Plaintiff's pro se status.

United States District Court
Northern District of California

from the facility.  Plaintiff asserts that Hollis pulled up beside her and threw a handful of coins through her open window, causing her to swerve and almost hit the curb.  (*Id.* at 163.)  Plaintiff then pulled ahead of Hollis, stopped her car, and both parties exited their vehicles.  Plaintiff and Hollis then began a "physical altercation" until they were pulled apart by other co-workers. Plaintiff was subsequently arrested by the Oakland Police Department and spent the night in jail for making death threats against Hollis via text message shortly after the June 15 altercation.   The charges against Plaintiff were eventually dropped.

While the summary judgment record is disputed as to whether Hollis or Plaintiff was the aggressor, the record does establish that, following an investigation by management at P&DC, Noble came to believe that Plaintiff "insulted Norman Hollis, spit on his car, physically assaulted him, [and] took his jacket and Postal ID, and was arrested for making death threats to Mr. Hollis." (Dkt. No. 57 ¶ 9.)  Noble believed that these facts were corroborated by a San Francisco Police Department ("SFPD") report as a well as a temporary restraining order that Hollis was subsequently granted against Plaintiff; a temporary restraining order later sought by Plaintiff against Hollis was denied.  Noble also believed that the Oakland Police Department Report found that the text messages that Plaintiff sent Hollis included, among other inflammatory threats: "I'ma kil u.norm," "I wan u dead 2nite.," "I'ma kill u."  (Dkt. No. 57 at 41.)  While Plaintiff denies she sent the text messages, she does not deny Noble's representation that the Oakland Police Department Report about the incident stated that Plaintiff made such threatening text messages and that she was accordingly arrested.[3]

---

[3] The San Francisco Police Report regarding the June 15, 2008 physical altercation and the Oakland Police Report regarding the threatening text messages are not properly in the record. "[U]nauthenticated documents cannot be considered in a motion for summary judgment."  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  Authentication can be established through the personal knowledge of a witness or on any manner permitted by Federal Rule of Evidence 901(b) or 902.  *Id.* at 774.  Defendant submitted properly authenticated excerpts of Plaintiff's deposition.  Attached to those excerpts are the deposition exhibits.  Defendant makes no attempt, however, to authenticate those exhibits, including the police reports.  (Dkt. No. 56 ¶ 2.) Accordingly, the Court will not consider those documents in support of Defendant's arguments. As Plaintiff is proceeding pro se, however, the Court will consider the exhibits to the extent Plaintiff relies upon them in her opposition.  As a non-lawyer she cannot be faulted for relying on documents submitted by Defendant.

Following another "day in court," Noble issued a "Notice of 14 Calendar Day Suspension" to Plaintiff on September 29, 2008. (Dkt. No. 57, Ex. 7.)  Plaintiff was charged with "improper conduct" for her physical altercation with Hollis as well as sending the threatening text messages. The Notice stated, among other things, that Plaintiff's claims that she was not the aggressor "cannot be corroborated by any other evidence except that your hair was pulled in an attempt to restrain you." (*Id.* at 2.)  The proposed 14-day suspension was never implemented as the matter was still being adjudicated at USPS when Plaintiff's employment was terminated.

Noble also charged Hollis with "unacceptable conduct" and issued him a "Letter of Warning" on September 29, 2008.  Noble stated in the letter that Hollis "had a verbal disagreement with [Plaintiff] at the time clock" and that he "proceeded to get into a physical altercation with [Plaintiff]." (Dkt. No. 72 at 34.)

Around the beginning of August 2008, Hollis and Plaintiff had another encounter in the stairwell at P&DC.  Hollis called SFPD to the facility based on his belief that Plaintiff violated the six-feet distance specified in the restraining order against Plaintiff.  SFPD arrived at the scene and ultimately determined not to arrest Plaintiff for the alleged violation of the restraining order. Nonetheless, Malcolm Chun, Noble's and Plaintiff's manager at USPS, determined that Plaintiff had admitted that she violated the six-feet distance and therefore placed her on administrative leave with pay for one day and temporarily reassigned her to a different San Francisco USPS facility beginning August 18, 2008. (Dkt. No. 58, Ex. 1 at 8.)

On November 12, 2008, Noble issued yet another "Letter of Warning" charging Plaintiff with further unsatisfactory attendance on dates running from July 10, 2008 (one week after the July 2008 warning letter) to November 3, 2008. (Dkt. No. 57 ¶ 10.)  In addition, Plaintiff "hollered" at Noble on November 7, 10, and 13, 2008. (*Id.* at ¶ 11.)

Two days after issuing the November letter, Noble was told by another supervisor that Plaintiff was found not working in her assigned area for several hours.  A few days later, Noble found Plaintiff lying down in her car instead of working.  Noble also received reports from other employees regarding Plaintiff's failure to work in her assigned areas. (*Id.* ¶ 12 & Exhs. 15, 16.)

Noble issued a "Notice of Removal" to Plaintiff on February 5, 2009. The Notice of Removal notified Plaintiff that her employment with USPS would terminate on March 6, 2009 for the reasons set forth in the Notice. First, Plaintiff was charged with unsatisfactory performance because she was absent from her assignment on six dates from November 15, 2008 to December 11, 2008. Second, Ms. McDaniel was charged with improper conduct because she hollered at Noble on November 10, 2008 and again on November 13, 2008 and when confronted told her supervisor she needed to "get her stuff together." In addition, "elements of [Plaintiff's] past record" were "considered" in deciding to issue the Notice of Removal; specifically, Plaintiff's July 3, 2008 and November 12, 2008 warning letters as well as Plaintiff's 14-day suspension. (Dkt. No. 57, Ex. 18.) "In other words, [Noble] took [Plaintiff's] history of discipline into account when [she] decided to issue a Notice of Removal." (*Id.* at ¶ 13.) Noble issued the Notice of Removal because Plaintiff "had not responded to the lesser forms of discipline [she] had issued to her." (*Id.* at ¶ 14.) Plaintiff's employment with USPS terminated on March 6, 2009 pursuant to the Notice of Removal.

Plaintiff filed two Equal Employment Opportunity ("EEO") complaints regarding the alleged discrimination, harassment, and retaliation she suffered at USPS. The first EEO complaint was filed in mid-October 2008, though Plaintiff had an EEO redress meeting on September 9, 2008.[4] Plaintiff submitted her second formal EEO complaint on May 22, 2009. Plaintiff's complaints were denied.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins.*

---

[4] An EEO redress meeting is a meeting to try to resolve an informal EEO complaint before a formal complaint is filed.

*Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "[T]he moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial . . . and persuade the court that there is no genuine issue of material fact."  *Id.*

If the "moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense."  *Id.* at 1103.  If the nonmoving party fails to do so, "the moving party wins the motion for summary judgment."  *Id.* "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion."  *Id.*  In deciding whether there exist genuine issues of material fact, the court draws all reasonable factual inferences in favor of the non-movant.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

**A.     Unsworn Statements as Evidence**

As an initial matter, Defendant contends that Plaintiff has failed to put forth any evidence in opposition to summary judgment because Plaintiff's opposition brief/declaration was not made under penalty of perjury.  "Ninth Circuit case law has not been consistent on the issue of when, if ever, a district court should consider unsworn, inadmissible material in the summary judgment analysis."  *Rosenfeld v. Mastin*, 2013 WL 5705638, at *4 (C.D. Cal. Oct. 15, 2013) (collecting cases).  Defendant does not address this discrepancy in the caselaw and insists that Plaintiff's statements are categorically barred.  The Court is not persuaded; rather, like the *Rosenfeld* court, this Court follows the Ninth Circuit's decision in *Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003), which reversed a grant of summary judgment and held that the district court should have considered unsworn, arguably inadmissible statements written by the plaintiff in her diary to the extent those statements were within her personal knowledge.  The Ninth Circuit reasoned:

> At the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents.  The contents of the diary are mere recitations of events within [the plaintiff's] personal knowledge and, depending on the circumstances, could be admitted into evidence at

United States District Court
Northern District of California

> trial in a variety of ways.  [The plaintiff] could testify to all the
> relevant portions of the diary from her personal knowledge.  . . .
> Because the diary's contents could be presented in an admissible
> form at trial, we may consider the diary's contents in the
> [defendant's] summary judgment motion.

*Id.* at 1036-37 (citations omitted).  Thus, Plaintiff's unsworn statements in her opposition brief of which she has personal knowledge are evidence at the summary judgment stage.

## B.      Plaintiff's Claims under Title VII

Plaintiff's operative complaint alleges three distinct claims under Title VII of the Civil Rights Act of 1964: 1) discrimination on the basis of sex; 2) retaliation; and 3) harassment (hostile work environment).  (Dkt. No. 37.)  The Court addresses each claim in turn.

### 1.      Discrimination

Under Title VII, it is "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a).  "A person suffers disparate treatment in his employment when he or she is singled out and treated less favorably than others similarly situated on account of [protected status]."  *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (internal quotation marks omitted).

Title VII claims follow the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under *McDonnell Douglas*, Plaintiff must first establish a prima facie case.  *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).  To establish a prima facie case, Plaintiff must produce evidence which "give[s] rise to an inference of unlawful discrimination."  *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  If a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for allegedly unlawful conduct.  *Id.*  If the defendant articulates a legitimate reason, the burden shifts back to the plaintiff to demonstrate that the employer's stated reason is a pretext for unlawful discrimination.  *Id.*

United States District Court
Northern District of California

7

### a) Plaintiff's prima facie case

"[T]he prima facie case operates as a flexible evidentiary standard" and varies with the allegations and facts of a particular situation. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). "The prima facie case may be based either on a presumption arising from the factors such as those set forth in *McDonnell Douglas* [] or by more direct evidence of discriminatory intent." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (internal citation omitted). Direct evidence of discriminatory intent typically takes the form of "[r]acist or sexist statements." *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 662 (9th Cir. 2002). Because Plaintiff fails to identify any direct evidence showing discriminatory intent based on sex, the Court analyzes Plaintiff's prima facie case under the *McDonnell Douglas* factors.

To establish a presumption of discrimination in employment for the purposes of establishing a prima facie case, Plaintiff must show: (1) she is a member of a protected class;[5] (2) she was qualified for her position and performing her job satisfactorily; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside of her protected class were "treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (internal quotation marks omitted). Under this framework, "[t]he requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (citation omitted).

### 1) Satisfactory job performance

Defendant first argues that Plaintiff's job performance was not satisfactory as a matter of law. At the prima facie stage, the plaintiff need not "eliminate the possibility that [s]he was laid off for inadequate job performance"—such a requirement would "conflate the minimal inference needed to establish a prima facie case with the specific, substantial showing" required at the pretext stage of the *McDonnell Douglas* analysis. *Aragon*, 292 F.3d at 659. Further, courts do not

---

[5] It is undisputed that Plaintiff, a woman, is a member of a protected class.

United States District Court
Northern District of California

require a "flawless personnel file at all times during employment." *Bahri v. Home Depot USA, Inc.*, 242 F. Supp. 2d 922, 931 (D. Or. 2002). For instance, a plaintiff satisfies this element when deficiencies in performance are infrequent and minor. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1206, 1208 (9th Cir. 2008). By contrast, a plaintiff who openly violates company policy and continues to do so over an extended period of time, despite a warning, cannot demonstrate satisfactory performance. *Id.* at 1205–06, 1208 (concluding that plaintiff was not performing his job satisfactorily where plaintiff continued to operate his check-cashing business on company property over an extended period of time despite warnings that such solicitation was against company rules).

Defendant argues that Plaintiff's job performance was not satisfactory because she "was disciplined for unscheduled absences from work, absences from her assigned areas to work, violence and threats of violence, and hollering at her supervisor." (Dkt. No. 55 at 17.) While Plaintiff was disciplined for unscheduled absences from work in early July 2008 and November 2008, Plaintiff's absences—which Plaintiff does not dispute—appear minor and are not over an extended period of time relative to Plaintiff beginning work with USPS in June 2006. Plaintiff's unscheduled absences noted in the Letter of Warnings occurred on two dates in June 2008, two dates in July 2008, two dates in September 2008, five dates in October 2008, and one date in November 2008. (*See* Dkt. No. 57, Exs. 4 & 10.) For only three of these dates, Plaintiff is documented as missing eight hours of work for "usl," or, unscheduled sick leave. For the rest of the dates, the letters state that Plaintiff was absent for only a part of an hour; for three dates, the unscheduled absence is for a mere .11 of an hour, suggesting a possible issue with the length of Plaintiff's breaks. While the July 2008 Letter of Warning put Plaintiff on notice that her unscheduled absences were against USPS policy, it is not apparent that such a general warning encompassed Plaintiff's violations with respect to all her unscheduled absences. For instance, a reprimand that Plaintiff must schedule her sick days is not the same as notifying Plaintiff that her breaks are only 15 minutes. Further, the majority of the unscheduled absences, though numerous, are for only part of an hour and occurred over a period of six months during Plaintiff's nearly three years of employment with USPS. Drawing all inferences in Plaintiff's favor, as the Court must,

1   the Court concludes that there is a triable issue as to whether Plaintiff's unscheduled absences are

2   sufficient to defeat the "minimal inference" required for Plaintiff's prima facie showing.  *Aragon*,

3   292 F.3d at 659.

4        The same is true for Plaintiff's absences from her assigned work area.  Plaintiff was

5   warned in the July 2008 Letter of Warning that leaving her assigned work area violated USPS

6   policy.  Plaintiff, however, subsequently left her assigned work area on six occasions over a one

7   month period in late 2008.  These absences from her assigned work area, which Plaintiff does not

8   dispute, were one of the bases for Plaintiff's termination.  While Plaintiff's misconduct was

9   serious enough in the eyes of USPS to terminate Plaintiff's employment, the record is not clear as

10  to the nature of Plaintiff's absences from her assigned work area and whether the warning Plaintiff

11  received in July 2008 encompassed Plaintiff's later conduct.  Thus, the Court is also not persuaded

12  that Plaintiff's absences from her scheduled work areas defeat her prima facie case as a matter of

13  law.

14       Regarding Plaintiff's alleged violent conduct and threats of violence, Plaintiff does not

15  dispute that she got into a physical altercation with Mr. Hollis; however, Plaintiff asserts that only

16  she, and not Hollis, was disciplined for "the same action" and that she did not send the threatening

17  text messages.  (Dkt. No. 72 at 14.)  Given the factual dispute and the discrepancy in punishment,

18  the Court cannot conclude that the physical altercation with Hollis defeats the minimal inference

19  that Plaintiff was performing her job to satisfaction for purposes of Plaintiff's prima facie case as a

20  matter of law.

21       Finally, while Plaintiff does not dispute that she hollered at Noble, the record does not

22  show that such misconduct occurred over an extended period of time and that Plaintiff continued

23  the misconduct despite being warned that it violated USPS policy; rather, Plaintiff's only formal

24  discipline for hollering at Noble was the Notice of Removal, which cited two instances of

25  hollering over a three-day period.  The Court accordingly concludes that there is a triable issue as

26  to whether Plaintiff's hollering at Noble defeats the minimal inference that Plaintiff was

27  performing her job to satisfaction.

28

United States District Court
Northern District of California

10

1    Even when taken together, Plaintiff's discipline record does not definitively show that

2    Plaintiff was repeatedly violating non-minor USPS rules over an extended period of time despite

3    receiving specific warnings that such violations were against USPS policy.  *See Diaz*, 521 F.3d at

4    1208.  Although a close question, the Court accordingly concludes that a reasonable trier of fact

5    could find that Plaintiff has satisfied the first element of her prima facie case.

6                    **2)    Adverse employment action**

7            Generally, an adverse employment action is one that "materially affect[s] the

8    compensation, terms, conditions, or privileges of . . . employment."  *Chuang v. Univ. of Cal.*

9    *Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000).  While the Ninth Circuit has held that adverse

10   employment actions must be defined "broadly," *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir.

11   2000), "[n]ot every employment decision amounts to an adverse employment action," *Strother v.*

12   *S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869 (9th Cir. 1996).  Defendant contends a

13   reasonable trier of fact could not find that any of its challenged conduct—except for Plaintiff's

14   termination—is an adverse employment action.

15           First, Plaintiff asserts that her requests for light duty assignments to accommodate her

16   injuries were not "honored."  (Dkt. No. 72 at 6.)  Plaintiff does not state, however, that her

17   requests for light duty were ever denied; rather, Plaintiff explains that, contrary to USPS'

18   collective bargaining agreement, management required her to submit written requests for light

19   duty assignments even though Plaintiff had already submitted the necessary forms from her

20   doctor, and in the past had not been required to submit such requests.  (*Id.* at 7.)  The written

21   requests that Plaintiff complains of are hardly onerous; they are at most two sentences long.

22   While the requirement to submit written light duty requests may have been annoying, and even

23   unjustified, a quibble over a mindless and non-onerous task does not rise to level of an adverse

24   employment action.  *See Nguyen v. McHugh*, 2014 WL 4182694, at *12 (N.D. Cal. Aug. 22, 2014)

25   ("A quibble over a 10–minute absence versus a 30–minute absence does not rise to the level of an

26   adverse employment action, even if the difference resulted in a loss of pay for that disputed

27   absence period.").  Thus, Plaintiff may not pursue under Title VII the requirement that she submit

28   a written request for light duty.

United States District Court
Northern District of California

1    Second, Plaintiff states that she was wrongly denied FMLA leave.  Plaintiff attached

2 several "Request for or Notification of Absence" forms to her opposition.  Although some of the

3 forms show that Plaintiff was granted her request for FMLA leave, at least two forms show that

4 her request for FMLA was denied.  Defendant does not directly contend that these FMLA denials

5 are not adverse employment actions; rather, Defendant asserts that "Plaintiff has not produced any

6 evidence that she was denied FMLA leave," and that Noble did not have the authority to grant or

7 deny FMLA leave.  (Dkt. No. 45 at 5.)  However, as just noted, Plaintiff has produced evidence

8 that she was denied FMLA leave.  Further, Defendant fails to explain why Noble's lack of

9 involvement in the FMLA process is relevant in analyzing Plaintiff's prima facie discrimination

10 case.  The Court is thus not persuaded that denial of FMLA is not an adverse employment action.

11 *See Muldrow v. Blank*, 2014 WL 938475, at *7 n.4 (D. Md. Mar. 10, 2014) ("[D]enying Plaintiff

12 FMLA leave . . . may constitute an adverse employment action.").

13    Third, Plaintiff asserts that she was wrongly denied the opportunity to do "high dusting,"

14 which is a custodian job-duty that results in higher pay following proper certification.  Plaintiff's

15 assertions regarding the denial of high dusting job duties are as follows:

16       There was a sign-up list that went around to every tour two labor
         custodian who was interested in training.  The training was
17       conducted by Lawrence Mellion. When Aurora Banzuelo and I seen
         Norma Hollis and Robert Fleming High Dusting we asked Lawrence
18       why they were High Dusting with lesser seniority then her and I.
         Lawrence Mellion informed us that he was just following Bonnie
19       Noble orders.  Aurora and I complained to the APWU about how we
         were passed up for the High Dusting positions by Norman Hollis
20       and Robert Fleming.   The Union contacted the maintenance
         managers and later Aurora was able to be trained but not certified.
21

22 (Dkt. No. 72 at 11; *see also* Dkt. No. 56, Ex. 1 (Plaintiff's deposition) ("I was never trained for

23 [high dusting] either even though I signed up for it.").)  Defendant provides a declaration from

24 Noble wherein she asserts that she did not prevent Plaintiff from receiving training for high

25 dusting, and that Plaintiff "earned this higher pay" by doing "high dusting or painting."  (Dkt. No.

26 57 ¶ 16.)  However, Noble's contrary assertion that she did not prevent Plaintiff from being

27 trained merely creates a disputed fact that precludes summary judgment.  Moreover, at oral

28 argument Defendant conceded that the record is at best unclear as to whether Plaintiff performed

United States District Court
Northern District of California

1   high dusting.  Finally, Defendant does not argue that the alleged failure to allow Plaintiff to do

2   high dusting does not constitute an adverse employment action.

3          Fourth, Plaintiff states that she was not rotated to work outside, even though working

4   outside was supposed to be part of her job rotation.  Plaintiff contends that she was subjected to a

5   policy that favored men with regard to outside work.  Although Noble states in her declaration that

6   "[n]o USPS policy requires custodians to be rotated between working inside a building and

7   outside a building," such a statement merely creates an issue of disputed fact not amenable to

8   summary judgment.  In addition, Defendant contends that Plaintiff has failed to show this was an

9   adverse employment action because Plaintiff stated in deposition that she did not think that

10  working outside was "better" than working inside.  Defendant, however, fails to cite any authority

11  for the proposition that an adverse employment action includes only those actions that prevent an

12  employee from accessing conditions of employment that the employee believes are better than

13  other conditions.  The Court is accordingly not persuaded that preventing Plaintiff from

14  participating in the normal job rotation is not an adverse employment action as a matter of law.  A

15  reasonable jury could find otherwise.

16         Fifth, the Court is also not persuaded that Plaintiff's proposed 14-day suspension is not an

17  adverse employment action as a matter of law.  Defendant argues (in a footnote) that Plaintiff's

18  14-day suspension is not an adverse employment action because the suspension was never made

19  final.  (*See* Dkt. No. 75 at 13 n.5.)  An employment action must be "sufficiently final to constitute

20  an adverse employment action."  *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000).

21  However, whether the 14-day suspension was sufficiently final—despite the fact that the

22  suspension was never issued—is a question of fact.  Specifically, Plaintiff's Notice of Removal

23  states that the 14-day suspension, along with Plaintiff's two warning letters, were "considered" in

24  arriving at the decision to terminate Plaintiff's employment.  (Dkt. No. 57, Ex. 18.)  Further,

25  Noble states in her declaration that she "took [Plaintiff's] history of discipline into account when

26  [she] decided to issue a Notice of Removal."  (*Id.* at ¶ 13.)  A reasonable jury could find that the

27  14-day suspension, although never applied, had final and lasting harm on Plaintiff's employment.

28  *See Leland v. City and County of San Francisco*, 576 F. Supp. 2d 1079, 1098 (N.D. Cal. 2008)

(concluding that a reasonable jury could find that plaintiff's negative evaluation—which was never formally filed—was final and lasting because plaintiff was transferred one month after the evaluation was created).  Further, *Brooks* is distinguishable because the plaintiff there abandoned her job while her appeal of a negative evaluation was pending.  Here, Plaintiff was fired, perhaps in part because of the proposed 14-day suspension.

Thus, a reasonable trier of fact could find that (1) the denial of FMLA leave, (2) the denial of the opportunity to perform high dusting, (3) the failure to rotate Plaintiff to work outside, (4) Plaintiff's proposed 14-day suspension, and (5) the termination of Plaintiff's employment each constitute an adverse employment action.

### 3) Whether similarly situated individuals outside of Plaintiff's protected class were treated more favorably, or other circumstances surrounding the adverse employment actions give rise to an inference of discrimination

Plaintiff may satisfy the fourth element of the prima facie case by showing "that similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action [that] give rise to an inference of discrimination."  *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (internal quotation marks and citation omitted).

With respect to the denials of FMLA leave, Plaintiff fails to even assert that any similarly situated male was treated differently.  Plaintiff's prima facie case accordingly fails to the extent Defendant's discriminatory conduct is based on the denial of FMLA leave.

Regarding Plaintiff's exclusion from high dusting work, it is undisputed that male custodians with less seniority than Plaintiff were allowed to perform high dusting.  It is also undisputed, however, that female custodians with less seniority were allowed to perform high dusting.  Indeed, in March 2008, Plaintiff signed a petition to management in which she and other custodians complained that "Ivonne Reynoso, Allen Paunovich, and Shelbert Spencer" were selected "to perform projects that consistently result in high level of pay and overtime."  (Dkt. No. 72 at 28.)  Ivonne and Shelbert are females like Plaintiff.  Further, Plaintiff herself admits that after she and her female co-worker complained about the lack of high dusting training, the female

United States District Court
Northern District of California

1    co-worker was in fact trained in high dusting.[6]  (Dkt. No. 72 at 11.)  Thus, while Plaintiff has

2    made a prima facie showing that she was treated unfairly, the circumstances here do not permit a

3    reasonable inference that she was treated unfairly *because of her gender*.  *See Fuller v. Maricopa*

4    *Cnty. Comty. Coll. Dist.*, 2012 WL 1413167, at *3 (D. Ariz. Apr. 24, 2012) (holding that plaintiff

5    did not make prima facie showing of fourth element of *McDonnell Douglas* framework because

6    she admitted "that both men and women received more favorable treatment").  She thus has not

7    made a prima facie case of gender discrimination as to her high dusting claim.

8        The result is different as to Defendant's alleged failure to include Plaintiff in outside work.

9    Because it is undisputed that male custodians in her same group were rotated outside, and that no

10   females were assigned to outside work, Plaintiff has sufficiently shown that that other similarly

11   situated employees outside of her protected class were treated differently with respect to outside

12   work sufficient to give rise to an inference of gender discrimination.

13       Regarding her 14-day suspension, Plaintiff contends that Hollis was not disciplined as

14   severely for the "same action."  (Dkt. No. 72 at 14.)  Plaintiff denies that she was the aggressor in

15   the physical altercation with Hollis, and suggests that she and Hollis were at least equally

16   aggressive.  She also disputes that she made any death threats toward Hollis.  (*See* Dkt. No. 56,

17   Ex. 1 at 260:23-261:1.)  Whether Plaintiff was the aggressor in the physical altercation with

18   Hollis, and whether Plaintiff sent death threats, are disputed factual issues.  For purposes of

19   Plaintiff's prima facie case, Plaintiff's statements regarding the encounter and the threats are

20   sufficient to provide the required minimal inference of disparate treatment.

21       Finally, Plaintiff has failed to identify any evidence that supports a minimal inference that

22   any similarly situated male co-worker was not terminated.  Plaintiff's Notice of Removal plainly

23   states that Plaintiff was terminated for particular violations of USPS policy.  Plaintiff, however,

24   does not even assert that any male employee with a materially similar disciplinary record was not

25

26

27   [6] Although Plaintiff asserts this female co-worker was never certified in high dusting, Plaintiff
     fails to provide any explanation, let alone any evidence, regarding the failure to certify; thus,
28   Plaintiff has not shown that the failure to certify the female co-worker in high dusting was USPS'
     fault rather than the co-worker's fault.

terminated.  Thus, no reasonable jury could find that any similarly situated male employee was not terminated.

Plaintiff has accordingly stated a prima facie case of sex discrimination based on Defendant's 1) Defendant's failure to rotate Plaintiff to outside work, and 2) the imposition of a 14-day suspension.

**b)    Proffered non-discriminatory explanation and evidence of pretext**

Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment decision. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).  "An employer's reasons need not rest upon true information." *Means v. City and County of San Francisco*, 749 F. Supp. 2d 998, 1004 (N.D. Cal. 2010).  Instead, courts "only require that an employer honestly believed its reasons for its actions, even if its reason is foolish or trivial or even baseless." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (internal quotation marks omitted).  "If the employer carries this burden, and plaintiff demonstrates a genuine issue of material fact as to whether the reason advanced by the employer was a pretext, then the retaliation case proceeds beyond the summary judgment stage." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004).  In cases based on circumstantial evidence of discrimination, such as this one, a plaintiff's evidence of pretext "must be specific and substantial to defeat the employer's motion for summary judgment." *EEOC v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009)

Regarding the outside work rotations, Defendant relies on Ms. Noble's declaration for the proposition that, at least in her mind, rotating employees to outside work was within her discretion and that of her group leaders.  (Dkt. No. 57 ¶ 15.)  She further states that when she arrived at P&DC "there was an established group of male custodians who worked outside and had specialized knowledge about taking care of plants and trees, among other things." (*Id.*)  In addition, she has no recollection of ever denying Plaintiff's request to work outside and states that "very few" custodians wanted to work outside due to the requirement that they work in all weather conditions.  (*Id.*)  Taken together, this evidence provides a legitimate non-discriminatory reason

United States District Court
Northern District of California

for failing to rotate Plaintiff to outside work.  Although Plaintiff disputes that the outside rotation was merely discretionary, she does not offer any evidence that disputes Noble's belief; for example, she does not identify any written work policy.  Even if this belief is foolish or baseless, it does not make the reason for the adverse action illegitimate and discriminatory.  *See Villiarimo*, 281 F.3d at 1063.  Further, Noble saw no need to rotate Plaintiff to outside work since a request by Plaintiff to her to work outside—a job very few custodians wanted to do—was never made and an experienced outside work crew was already assembled.

Plaintiff provides no "substantial and specific" evidence of pretext to rebut Defendant's proffered explanation.  *Boeing*, 577 F.3d at 1049.  Although Plaintiff testified in her deposition that she "made complaints" about the failure to rotate her outside, she does not specify who she made the complaint to.  (Dkt. No. 56 at 10, 23:20-23.)  And Plaintiff's opposition does not state that she ever asked Noble to be rotated to outside work.  (Dkt. No. 72 at 10.)  Further, Plaintiff does not challenge Noble's good faith belief that she was not required to rotate all custodians to outside work.  Summary judgment is accordingly granted to Defendant on Plaintiff's claim for discrimination based on outside work rotations.

Defendant also proffers a legitimate, non-discriminatory reason for Noble's decision to issue Plaintiff a 14-day suspension for the June 2008 physical altercation and death threats while only serving Hollis with a Letter of Warning.  Noble based her decision on police reports that corroborated the USPS investigators' conclusion that she was the aggressor in the encounter with Hollis and that she sent death threats to Hollis.  (Dkt. No. 57 ¶ 9.)  Hollis' successful application for a restraining order against Plaintiff—and Plaintiff's *un*successful application for a restraining order against Hollis—provided an additional reason to believe for Noble to believe that Plaintiff was the party more at fault for the escalation of the encounter.  (*Id.*)  As noted above, even if Noble's belief about Plaintiff's role in the altercation was based on erroneous information—for instance, the police reports were factually incorrect—it does not make the proffered explanation for the adverse action illegitimate and discriminatory since Noble honestly took as true the information she received about the incident indicating that Plaintiff was the aggressor.  *See Villiarimo*, 281 F.3d at 1063.

17

United States District Court
Northern District of California

1     Given this legitimate explanation, Plaintiff must provide "substantial and specific"

2  evidence of pretext.  Plaintiff fails to do so.  Plaintiff's insistence that evidence existed at the time

3  of her discipline that contradicted Noble's findings is unavailing.  That Plaintiff was not criminally

4  prosecuted for assault or death threats does not constitute substantial evidence that Noble did not

5  honestly believe that Plaintiff committed those acts; rather, it merely shows that third parties

6  chose, for whatever reason, not to prosecute Plaintiff for those acts.  There is nothing in the record

7  to dispute Noble's assertion that based on the Oakland Police Department Report, that San

8  Francisco Police Department Report, and the investigator's report she honestly believed that

9  Plaintiff was the aggressor in the altercation with Hollis and that she texted Hollis death threats.

10  Because Plaintiff fails to provide any evidence upon which a reasonable jury could find that

11  Defendant's proffered explanation is pretextual, Defendant's motion for summary judgment is

12  accordingly granted on Plaintiff's claim for discrimination based on the issuance of the 14-day

13  suspension.

14         **2)      Retaliation**

15     Title VII prohibits retaliation against an employee for opposing any unlawful employment

16  practice under Title VII.  42 U.S.C. § 2000e–3(a); *Nilsson v. City of Mesa*, 503 F.3d 947, 953 (9th

17  Cir. 2007).  While *McDonnell Douglas* dealt specifically with an unlawful discrimination claim,

18  retaliation claims follow the same burden-shifting framework.  *See Dawson v. Entek Int'l*, 630

19  F.3d 928, 936 (9th Cir. 2011).  To establish a prima facie case, Plaintiff must show (1) that she

20  "engaged in a protected activity"; (2) that she "was subsequently subjected to an adverse

21  employment action"; and (3) "that a causal link exists between the two."  *Id.*

22         **a)      Plaintiff's prima facie case**

23     Defendant concedes that Plaintiff engaged in a protected work activity when she met with

24  Noble and Chun on September 9, 2008 to discuss her complaints about discrimination and

25  harassment, and when she formally filed her EEO complaint on October 15, 2008.[7]  Next, Plaintiff

26  _____

27  [7] Although Plaintiff also filed a second EEO complaint in May 2009, Plaintiff was no longer
employed by USPS at that time and thus the complaint could not have caused any adverse

28  employment action as a matter of law.  At oral argument, Plaintiff explained that Defendant began
disciplining her after she, along with others, began complaining to management and the union

must demonstrate that some adverse employment action occurred subsequent to this protected conduct.   Two adverse employment actions plainly occurred subsequent to the protected activity: Plaintiff's 14-day suspension on September 29, 2008 and Plaintiff's Notice of Removal on February 5, 2009.  Further, Plaintiff's contention that she was never rotated to outside work was an adverse employment action that existed both before and subsequent to the protected conduct. Plaintiff was also denied FMLA leave both before and at least one time subsequent to the meeting with Noble and Chun.  (*See* Dkt. No. 72 at 49 (showing that plaintiff applied for, and denied, FMLA leave on September 18, 2008).)  Regarding high dusting duties, however, Plaintiff fails to state when she requested an assignment to such duties and when her request was denied.  Because Plaintiff has not identified evidence in the record supporting an inference that this adverse employment action occurred subsequent to September 9, 2008, her exclusion from high dusting duties cannot form the basis of her retaliation claim.

The final factor needed for a prima facie case is to establish "a causal link between the protected activity and the adverse employment action."  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034–35 (9th Cir. 2006).  Courts may infer the requisite causal link from "the proximity in time between the protected activity and the adverse action."  *Dawson*, 630 F.3d at 936.  Here, the Notice of Removal was not issued until approximately four months after Plaintiff filed her October 15, 2008 EEO complaint.  A several-month gap in time does provide the requisite causal link.  *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (stating that "[t]he cases that accept mere temporal proximity . . . hold that the temporal proximity must be 'very close,'" and citing cases where a gap of three to four months was found insufficient).  And while the denial of FMLA leave on September 18, 2008 is very close in time to Plaintiff's meeting with Noble and Chun, Plaintiff fails to connect Noble or Chun to the decision to deny Plaintiff FMLA leave; accordingly, there is no causation.  *See Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (granting employer's motion for summary

about unfair treatment.  (Dkt. No. 72 at 5, 22-31).  The record does not support a finding, however, that these complaints are protected activity under Title VII because Plaintiff and her co-workers were not complaining about unlawful discrimination.  *See E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009).

1    judgment because plaintiff "fail[ed] to point to any evidence in the record supporting her assertion

2    that Layral and Thibodeau, the particular principals who made the allegedly retaliatory hiring

3    decisions, in fact *were* aware of her complaints").

4       However, causation is established for purposes of Plaintiff's prima facie with respect to the

5    suspension because Noble issued Plaintiff's 14-day suspension only 20 days after Plaintiff met

6    with Noble to discuss Plaintiff's impending EEO complaint.  Further, causation can be inferred for

7    purposes of the prima facie case from Noble's continuation of the alleged bar on Plaintiff's outside

8    job duties through the time of Plaintiff's protected activity.

9       Defendant proposes a legitimate, non-retaliatory reason for the actions.  As discussed

10    above, Noble issued the suspension based on an honest belief that Plaintiff had assaulted a co-

11    worker and made death threats against the co-worker.  *See Villiarimo*, 281 F.3d at 1063.  In

12    addition, Noble did not include Plaintiff in the outside rotation because Noble honestly believed

13    such rotation was discretionary and she was not aware that Plaintiff wanted to work outside.

14       Plaintiff identifies no substantial and specific evidence to counter Defendant's proffered

15    explanations.  While "[i]n some cases, temporal proximity can by itself constitute sufficient

16    circumstantial evidence of retaliation for purposes of *both* the prima facie case and the showing of

17    pretext," *Dawson*, 630 F.3d at 937 (emphasis added), this is not such a case.  In light of Noble's

18    honest belief regarding Plaintiff's violent actions against a co-worker—which plainly would

19    justify a suspension—it would be unreasonable to conclude that Noble would not have issued the

20    suspension "but for" Plaintiff's discrimination complaint, in the absence of any evidence beyond

21    temporal proximity.  *See Univ. of Tex. S.W. Med. Ctr. v. Nassar*, ⎯ U.S. ⎯, ⎯, 133 S.Ct.

22    2517, 2534 (2013) ("[A] plaintiff making a retaliation claim under [Title VII] must establish that

23    his or her protected activity was a but-for cause of the alleged adverse action by the employer.").

24    Plaintiff also fails to identify any evidence that would support a reasonable jury's finding that

25    Noble would have included Plaintiff in the outside job duties but for Plaintiff's protected activity;

26    rather, Plaintiff's evidence shows that Noble did not include Plaintiff in the outside job duties even

27    *before* she engaged in the protected conduct.  The record accordingly supports only the conclusion

28

that Plaintiff's protected activity was not the but-for cause of Noble's decision to exclude Plaintiff from outside work.

Defendant's motion for summary judgment on Plaintiff's retaliation claim is therefore granted.

**3)     Harassment**

To establish a prima facie case for her hostile work environment claim under Title VII, Plaintiff must raise a genuine dispute of fact as to whether (1) she was "subjected to verbal or physical conduct" because of her race, gender, or national origin; (2) "the conduct was unwelcome"; and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive work environment." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003). In determining whether a plaintiff's allegations make out a colorable claim of hostile work environment, courts apply a totality of the circumstances test, looking at factors like frequency, severity, and level of interference with work performance. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations and internal quotation marks omitted). Conduct is considered from the perspective of the "reasonable victim." *Brooks*, 229 F.3d at 924.

Plaintiff's opposition to the motion for summary judgment includes no discussion whatsoever of any verbal or physical conduct she suffered because of her sex, let alone that any such conduct "was sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive work environment." *Manatt*, 339 F.3d at 798. Because Plaintiff fails to identify any evidence in support of her harassment claim, Defendant's motion for summary judgment on the harassment claim is granted.

## CONCLUSION

The Court recognizes that as a plaintiff proceeding pro se Plaintiff has an uphill battle. The Court thus took her pro se status into account in granting her numerous extensions of time to file her summary judgment opposition, in specially setting the summary judgment hearing so she

would not have to miss work, and in treating her unsworn summary judgment opposition as a declaration for otherwise admissible facts within her personal knowledge.  The Court cannot, however, hold her to a lower summary judgment standard.  Since drawing all inferences in Plaintiff's favor the record does not support a finding of liability on any of Plaintiff's claim, Defendant's motion for summary judgment is granted in its entirety.

This Order disposes of Docket No. 55.

**IT IS SO ORDERED.**

Dated: September 17, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge